UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARY ELLEN CRANMER NICE                    CIVIL ACTION

VERSUS                                      NO: 18-7362

UNITED STATES OF AMERICA                    SECTION: "H"

## ORDER AND REASONS

Before the Court are Defendant's Motion for Partial Summary Judgment (Doc. 31); Defendant's Motion in Limine to Exclude Plaintiff's Expert (Doc. 32); Plaintiff's Motion in Limine to Admit Certain Items of Evidence (Doc. 33); Plaintiff's Motion for Partial Summary Judgment (Doc. 35); and Defendant's Motion in Limine to Preclude Evidence of Fraud or Criminal Conduct (Doc. 67). For the following reasons, Defendant's Motion for Partial Summary Judgment is **DENIED AS MOOT**; Defendant's Motions in Limine are **GRANTED**; and Plaintiff's Motion for Partial Summary Judgment and Motion in Limine are **DENIED**.

## BACKGROUND

This case arises out of the alleged over-taxation of Plaintiff Mary Ellen Cranmer Nice ("Mrs. Nice") by the federal government.[1] In 2002, Mrs. Nice's husband died after sixty-one years of marriage, leaving behind substantial assets to provide for her care for the remainder of her life. Mrs. Nice's son,

---

[1] Mrs. Nice passed away in March 2019, and her estate was substituted as Plaintiff in this matter. *See* Docs. 15, 16.

1

Charles Nice, III ("Chip"), was named executor of Mrs. Nice's husband's estate and subsequently moved in with Mrs. Nice. By 2005, Mrs. Nice began showing signs of mental deterioration, and she was diagnosed with probable early dementia in 2007. Over the course of the next few years, her dementia progressed. During this time, Chip allegedly began exploiting his mother financially. Plaintiff alleges that Chip separated Mrs. Nice from access to her accounts, diverted Mrs. Nice's income for his own personal use, gained fraudulent access to Mrs. Nice's retirement accounts, caused distributions to be made from Mrs. Nice's retirement accounts, and diverted said distributions for his own personal control and use.

In 2011, Chip allegedly caused Mrs. Nice to execute a fraudulent power of attorney. Between August 2011 and April 2014, Chip allegedly submitted tax returns on behalf of Mrs. Nice. In 2014, Mrs. Nice's daughter, Julianne Nice, instituted suit against Chip in Orleans Parish Civil District Court ("Civil District Court") to remove him from Mrs. Nice's home and finances. A temporary injunction was subsequently issued. Chip died on January 1, 2015, and on January 6, 2015, Mrs. Nice was interdicted; Julianne Nice was named her curatrix. In 2016, the Civil District Court ordered that the 2011 power of attorney granted to Chip was an absolute nullity. Julianne Nice filed amended tax returns on behalf of Mrs. Nice, seeking a refund for the tax years 2006, 2007, 2009, 2010, 2011, 2012, and 2013. All claims were denied except for tax years 2009, which was accepted in part, and 2007, which was never responded to. Plaintiff appealed each denial, and the appeals were denied.

On August 2, 2018, Mrs. Nice, acting through her curatrix Julianne Nice, instituted this suit, seeking from the United States a refund of $519,502 in federal income taxes, plus interest and penalties, for the aforementioned years. The crux of Plaintiff's complaint is that Mrs. Nice never actually received the

income for which she was taxed because of Chip's fraudulent diversion of her funds for his own use and benefit. Because of Chip's alleged fraudulent acts, Plaintiff argues that Mrs. Nice's tax returns from 2006 until 2014 over-stated her real income, which resulted in an overpayment of income taxes. Plaintiff seeks a return of these funds.

Defendant filed the instant Motion for Partial Summary Judgment, asking the Court for a determination that, as a matter of law, the constructive receipt doctrine is inapplicable for determining whether Plaintiff received as income the items disbursed into her personal bank account and later reported on her federal income tax returns. Plaintiff filed the instant Motion for Partial Summary Judgment asking the Court to determine that, as a matter of law, Plaintiff did not actually or constructively receive the items of income deposited into her bank account. Thereafter, the parties filed a Joint Stipulation regarding these two Motions. The Joint Stipulation states that the constructive receipt doctrine is inapplicable in this case; that, consequently, the Defendant's Motion for Partial Summary Judgment is moot; and that the only remaining issue in Plaintiff's Motion for Partial Summary Judgment is whether Mary Ellen Cranmer Nice *actually received* as income the items disbursed into her personal bank account and reported on her tax returns.

The Defendant also filed the instant Motions in Limine, seeking to exclude the expert witness testimony of Plaintiff's expert, Dr. Nona Epstein, and to exclude evidence of fraud or criminal conduct by Chip from being introduced at the trial on this matter. Plaintiff also filed the instant Motion in Limine, seeking an order admitting three certain items into evidence. The Court will address each motion in turn.

# LEGAL STANDARD

## I. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues

---

[2] FED. R. CIV. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] *Id.*
[5] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## II. Admissibility of Evidence

"The essential prerequisite of admissibility is relevance."[11] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action."[12] Whether a fact is of consequence is a question governed by the substantive law applicable to the case.[13]

## LAW AND ANALYSIS

### I. Defendant's Motion for Partial Summary Judgment

The Defendant's Motion for Partial Summary Judgment asks the Court to determine that, as a matter of law, the constructive receipt doctrine is inapplicable in this case.[14] As previously noted, the parties filed a Joint Stipulation wherein the parties agree that the constructive receipt doctrine is inapplicable and that the "the United States' motion for partial summary judgment is moot."[15] Accordingly, the Defendant's Motion for Partial Summary Judgment is **DENIED AS MOOT**.

---

[8] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[11] United States v. Hall, 653 F.3d 1002, 1005 (5th Cir. 1981).
[12] FED. R. EVID. 401.
[13] *Hall*, 653 F.2d at 1005.
[14] *See* Doc. 31.
[15] Doc. 58 at 2.

## II. Plaintiff's Motion for Partial Summary Judgment

The Plaintiff's Motion for Partial Summary Judgment asks the Court to determine that, as a matter of law, the funds deposited into Mrs. Nice's bank account and later reported on her federal income tax returns were (a) not "actually received" by her as that term is used in §§ 61 and 451 of the Internal Revenue Code and Treasury Regulations § 1.451-1 or § 1.451-2; and (b) not "constructively received" by her as that term is used in §§ 61 and 451 of the Internal Revenue Code and Treasury Regulations § 1.451-1 or § 1.451-2.

Considering the Joint Stipulation's assertion that "the only legal issue outstanding in Plaintiff's motion for partial summary judgment is whether Mary Ellen Nice actually received as income the items disbursed into her personal bank account and reported on the federal income tax returns submitted to the IRS in the years 2011, 2012, 2013, and 2014,"[16] the Court first turns to the relevant law.

According to the Internal Revenue Code ("the Code"), gross income is taxable income.[17] The Code defines gross income as "all income from whatever source derived, including (but not limited to) . . . [i]nterest . . . [d]ividends . . . [a]nnuities . . . [i]ncome from life insurance and endowment contracts . . . [and] [p]ensions."[18] An item of income is to be included in the taxpayer's taxable gross income "for the taxable year in which *received* by the taxpayer."[19] Treasury regulations further provide that "[g]ains, profits, and income are to be included in gross income for the taxable year in which they are *actually or constructively received* by the taxpayer."[20] Actual receipt of income occurs when

---

[16] *Id.*
[17] 26 U.S.C. § 63(a).
[18] *Id.* at § 61.
[19] *Id.* at § 451 (emphasis added).
[20] 26 C.F.R. § 1.451-1(a) (emphasis added).

6

it is reduced to a taxpayer's possession.[21] Thus, when a taxpayer actually receives an item of gross income—when it is reduced to her possession—it is subject to taxation for the year in which it was received.

While the Internal Revenue Code does not define "receipt," the case law provides some instruction. The Supreme Court has held that "income which is subject to a taxpayer's unfettered command and that which he is free to enjoy at his own option is taxed to him as his income whether he sees fit to enjoy it or not."[22] Plaintiff asks this Court to find that Mrs. Nice never "actually received" the income for which she was taxed because (1) she was unaware of the funds; (2) she could not and did not exercise control of the funds; (3) she was substantially restricted from access to the funds and from using the funds due to her son's control; and (4) she did not benefit from the funds except to a "very limited, and indirect extent."

To support this position, Plaintiff asserts that "[c]ourts have routinely held that even where income is reduced to the possession of a taxpayer by deposit into an account owned by the taxpayer, actual possession does not occur when the possession of the taxpayer is hindered through no fault of the taxpayer, and the taxpayer is not free to enjoy the funds at her own option."[23]

In support, Plaintiff relies on *Roberts v. CIR*.[24] There, the taxpayer (Mr. Roberts) and his wife maintained two joint checking accounts. The parties eventually separated, and each spouse maintained exclusive use and control of only one of the accounts.[25] The taxpayer, Mr. Roberts, did not have a checkbook for, write checks on, or make withdrawals from the account that his estranged

---

[21] *Id.* at § 1.451-2(a).
[22] Corliss v. Bowers, 281 U.S. 376, 378 (1930).
[23] Doc. 35-1 at 11.
[24] 141 T.C. 569 (2013).
[25] *Id.* at 571.

7

wife maintained exclusive control over, nor did he receive that account's bank statements. In 2008, the taxpayer's estranged wife caused distributions to be made from the taxpayer's various IRA accounts, without his knowledge, into the checking account over which she had exclusive access.[26] The signatures on the withdrawal requests and disbursement checks were forgeries.[27] The court framed the issue as whether these forged IRA disbursement requests, not received by the named distributee-taxpayer or used for his benefit, constituted gross income attributable to him.[28] The court found that the taxpayer was not a taxable distributee of the IRA accounts because his estranged wife "signed the withdrawal requests and the checks, and [because] the signatures were made without [his] authorization."[29] Further, the distributions went to a checking account that was "joint in name only;" the taxpayer did not have a checkbook for the receiving account, did not make withdrawals from it, and was "generally unaware of the use of the . . . account."[30]

Unlike the plaintiff in *Roberts*, Mrs. Nice was the sole owner of the checking account into which the IRA distributions were made. Plaintiff points to no evidence in the record establishing that the distributions were made over forged signatures, that the account into which the distributions were deposited was joint, or that Chip had exclusive access to the funds in the account.[31] Mrs.

---

[26] *Id.* at 571–73.
[27] *Id.* at 577 ("[W]e find that the distribution requests were forged, and the endorsements on the checks that were issued pursuant to the forged requests were also forged. Petitioner, the purported payee on the checks, did not know of or authorize the requests, and he did not receive or cash the checks.").
[28] *Id.*
[29] *Id.* at 577–78.
[30] *Id.* at 578.
[31] Indeed, the deposition testimony of Mrs. Nice's daughter-in-law provides evidence that Chip needed his mother to provide him signed, blank checks in order to access the money in her account. *See* Doc. 35-4. The testimony also establishes that Mrs. Nice's daughter-in-law never witnessed her pay any utility bills and that Chip stated he used the signed checks

8

Nice, at all times, was the owner of the account into which the deposits were received. Moreover, evidence in the record demonstrates that Mrs. Nice *did* have a checkbook for, write checks on, and make withdrawals from the account.[32] The court in *Roberts* was able to find that the taxpayer was not the recipient of income distributions subject to taxation because his requests for the distributions were forged and the distributions went into an account for which he had no access or control over. As a result, *Roberts* cannot provide support for Plaintiff's position.

Plaintiff next cites *Leslie v. Commissioner of Internal Revenue*[33] for the proposition that "the taxpayer never received funds paid to an account bearing her name to which her access was prevented due to no fault of her own." In *Leslie*, the Tax Court found that the taxpayer did not constructively receive income for the 2009 tax year because the income was deposited into an account she did not open, did not control, did not access, and did not know existed.[34] The Tax Court specifically noted that knowledge of the funds' receipt is necessary for constructive receipt. At the outset, this Court notes that *Leslie* addressed the constructive-receipt doctrine—not an issue here.

Regardless of whether the constructive-receipt doctrine applies here, the Court specifically notes that Mrs. Nice had access to the account; made withdrawals from it for her personal use; wrote checks on the account; and most importantly, knew that it existed. *Leslie* is therefore inapposite for resolving the instant summary judgment issue.

---

for household repairs and household expenses. *Id.* Presumably, these utility bills were paid, and if Mrs. Nice did not pay them, the logical conclusion is that Chip did.

[32] The deposition testimony of Mrs. Nice's daughter-in-law states that she witnessed Mrs. Nice "write checks to go get her hair fixed or maybe for Debbie's piano lessons or something like that. . . . She would pay for Debbie's piano lessons, bring her own checkbook when she got her hair fixed weekly." *See* Doc. 35-4.

[33] T.C. Memo. 2016-171 (2016).

[34] *Id.* at *6–7.

At its core, Plaintiff requests this Court find as a matter of law that Mrs. Nice did not receive income as defined by the Code because once the funds "were received," they were used by Chip without valid authorization. This argument fails simply because Plaintiff must concede that the funds were received before they were misappropriated. Plaintiff's argument that Mrs. Nice suffered from dementia and was financially defrauded by her son does not in and of itself result in a finding that she did not actually receive income as defined by the Code. Plaintiff is unable to point to any authority for making such a broad finding, and this Court declines to do so.

Plaintiff has failed to show that as a matter of law, Mrs. Nice did not receive the income at issue. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.

### III. Defendant's Motion in Limine to Exclude Expert Testimony

The United States filed the instant Motion in Limine seeking to exclude the testimony of Plaintiff's expert, Dr. Nona K. Epstein. Plaintiff intends to call Dr. Epstein as a witness who will testify as to (1) Mrs. Nice's general health between September 20, 2007 and October 8, 2016; (2) Mrs. Nice's mental/cognitive status between September 20, 2007 and October 8, 2016; and (3) whether, in her expert opinion, Mrs. Nice would have been capable of handling her own financial affairs at any time after September 20, 2007. The Defendant is only opposed to Dr. Epstein testifying as an expert on the third subject, Mrs. Nice's mental capacity as it relates to her ability to manage her financial affairs. The Defendant argues that Dr. Epstein "is not a psychologist, nor a psychiatrist and, therefore, lacks the qualifications or experience to opine on Mrs. Nice's mental capacity and her ability to manage her financial affairs."[35] The Defendant also argues that "Dr. Epstein testified that [she]

---

[35] Doc. 32-1 at 2.

never inquired with Mrs. Nice about her financial affairs, nor did she do any neurological testing of Mrs. Nice."[36]

The Court need not engage in a *Daubert* analysis of Dr. Epstein's potential testimony regarding Mrs. Nice's ability to manage her financial affairs because the Court holds that such testimony is irrelevant. The substantive issue in this case is whether Mrs. Nice received the income for which she was taxed. Mrs. Nice's ability to manage her financial affairs has no bearing on her ability to receive taxable income, and Plaintiff provides the Court with no law to support such a contention.

Because Mrs. Nice's ability to manage her financial affairs is a fact of no consequence in this action, the proposed testimony is irrelevant, and therefore, inadmissible. Accordingly, Defendant's Motion in Limine to exclude the expert testimony of Dr. Epstein on the matter of whether Mrs. Nice was capable of managing her financial affairs is **GRANTED**.

## IV. Defendant's Motion in Limine to Exclude Evidence of Fraud or Criminal Conduct

The United States also filed a Motion in Limine asking the Court to preclude Plaintiff from introducing allegations of fraud or criminal conduct by Chip Nice at the trial on this matter.

For Plaintiff's claim of a tax refund to be successful, Plaintiff must prove that Mrs. Nice never received the income for which she was taxed. Plaintiff alleges that Chip Nice fraudulently caused disbursements to be made from Mrs. Nice's various retirement accounts into her personal checking account, and that once the funds were deposited into the checking account, Chip had his mother sign blank checks over to him which he would then use for his own benefit. These facts apparently form the basis of Plaintiff's contentions that

---

[36] *Id*.

11

Mrs. Nice was not aware of the funds, could not control the funds, was restricted from accessing the funds, and did not benefit from the funds—and consequently, did not actually receive the funds. Plaintiff, therefore, wants to introduce evidence of Chip's alleged fraudulent and criminal conduct to show that Mrs. Nice did not receive the income for which she was taxed. However, Plaintiff fails to demonstrate how these allegations are relevant to the issue of actual receipt of income.

The issue in this case is not whether Mrs. Nice was a victim of elder abuse or whether Chip Nice exploited his mother financially. The *sole* issue is whether Mrs. Nice actually received the income for which she was taxed. How the income was received or what happened after receipt is wholly irrelevant to this action.[37] Therefore, evidence that Chip allegedly caused fraudulent distributions to be made into his mother's checking account—purportedly without her knowledge—has no bearing on the issue of whether she received the income eventually disbursed. Additionally, what happens with the income once received, whether stolen or diverted by fraud, has no bearing on the issue of whether the income itself was actually received.[38]

The question of whether Mrs. Nice actually received income is properly answered without consideration of what Chip allegedly did to cause the income to be received by his mother or what he did with it afterward. Therefore, the

---

[37] To be clear, in order to receive income, the taxpayer need not be aware of the income. Further, there is no requirement that the taxpayer be the individual responsible for the effectuation of income or the source of the income.

[38] In fact, Plaintiff's own brief appears to appreciate the notion that income can be received without knowledge of it and without consideration of how it was subsequently managed. Plaintiff asserts that "when Mary Ellen Cranmer Nice had no knowledge that she had received that income, and it is Chip Nice's conduct that prevented [her] from having access to and control over her accounts, this conduct is relevant." Doc. 69 at 3. Here, Plaintiff expressly acknowledges that "[Mrs. Nice] had received that income," albeit with "no knowledge," and that subsequent to that receipt, Chip's conduct allegedly prevented his mother's access to and control over her accounts.

Court holds that evidence of Chip's allegedly fraudulent and criminal conduct as it relates to his mother's finances is irrelevant, and therefore, inadmissible. Accordingly, Defendant's Motion in Limine is **GRANTED**.

V. **Plaintiff's Motion in Limine to Admit Certain Items of Evidence**

Lastly, Plaintiff filed the instant Motion in Limine to admit three items of evidence at the trial on this matter: two spiral-bound notebooks containing entries allegedly in Chip's handwriting, a Social Security earnings statement for Chip, and certain "expense breakdowns" and credit card statements produced by Chip in conjunction with a deposition taken in October 2014. Plaintiff argues that these items "individually and collectively constitute probative evidence that Chip Nice was engaged in a scheme to defraud his mother, Mary Ellen Cranmer Nice. Such evidence in turn supports Plaintiff's contention that the monies Chip Nice fraudulently obtained cannot be considered 'income' to Mary Ellen Cranmer Nice."[39]

The Court has determined that evidence relating to Chip Nice's alleged fraudulent and criminal conduct will not be admissible at the trial on this matter. Accordingly, Plaintiff's Motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. 31) is **DENIED AS MOOT**; Plaintiff's Motion for Partial Summary Judgment (Doc. 35) is **DENIED**; Defendant's Motion in Limine to Exclude Expert Testimony (Doc. 32) is **GRANTED**; Defendant's Motion in Limine to Preclude Evidence of Fraud and Criminal Conduct (Doc. 67) is

---

[39] Doc. 33-1 at 1.

13

**GRANTED**; and Plaintiff's Motion in Limine to Admit Certain Items of Evidence (Doc. 33) is **DENIED.**

New Orleans, Louisiana this 16th day of October, 2019.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**