IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MARY ELLEN CRANMER NICE, | ) ) ) | Case No. 2:18-cv-07362-JTM-DMD |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Estate of Mary Ellen Cranmer Nice, contends that the taxpayer, Mary Ellen

Cranmer Nice, did not receive the items of income directly deposited into her personal checking

account and thereafter reported on her federal income tax returns for the 2006, 2007, and 2009

through 2013 tax years because the taxpayer's son, Charles M. Nice, III ("Chip Nice") allegedly

diverted funds from the taxpayer's checking account and then used those funds for his own

benefit.  Plaintiff's argument, however, rests on the dubious assertion that the taxpayer did not

receive the income before it was allegedly taken from her.  Plaintiff's argument fails because—

as this Court already observed— Plaintiff must concede that the taxpayer received the items of

income that were directly deposited into her personal checking account before they were

allegedly misappropriated.  Because there is no genuine dispute of fact and, as a matter of law,

the taxpayer received the items of income at issue, summary judgment should be granted in favor

of the United States and this Court should deny Plaintiff's claim for refund of $519,502 in

federal income taxes, plus interest and penalties.

## INTRODUCTION

This Court is familiar with this case's procedural posture and the undisputed facts.  In its Order and Reasons entered October 16, 2019 (ECF No. 76), this Court, among other rulings, denied Plaintiff's motion for partial summary judgment on the issue of whether the taxpayer actually received the income at issue and, in fact, found "Plaintiff [] failed to show that as a matter of law, [the taxpayer] did not receive the income at issue."  *Id.*  Based on the Court's evidentiary rulings and this finding, the United States now moves for summary judgment in its favor that the taxpayer actually received the items of income directly deposited into her personal checking account and thereafter reported on her federal income tax returns.

Plaintiff contends that the taxpayer did not actually receive the income she reported on her federal income tax returns because the taxpayer (i) was unaware of the funds; (ii) could not and did not actually exercise control over the funds; (iii) was substantially restricted from access to and from using the funds due to Chip's control; and (iv) did not benefit from the funds, except to a very limited, and indirect extent.  Plaintiff also alleges that, at the time the items of income were received by the taxpayer and diverted, the taxpayer was suffering from dementia and/or cognitive deficiencies, which, according to Plaintiff, inhibited her ability to receive the income in question.

The Court's Order and Reasons disposes of the majority of Plaintiff's arguments. Specifically, the Court determined that, despite the taxpayer's dementia diagnosis and Chip Nice's alleged nefarious behavior, the taxpayer had access to, exhibited control over and was aware of the personal checking account into which the direct disbursements of retirement and pension income were received.  ECF No. 76.  In the same order, the Court granted the government's motion to exclude evidence of Chip Nice's alleged fraudulent and criminal

conduct and three items of evidence demonstrating Chip Nice's alleged "scheme to defraud his mother" at a trial of this matter, determining that the evidence "has no bearing" on the issue of actual receipt. *Id.* Thus, the only remaining issue before the Court is whether the taxpayer received the income directly disbursed into her personal checking account and reported on her federal income tax returns. As demonstrated by the taxpayer's checking account statements and federal income tax returns, as well as admissions by the taxpayer's family members, the taxpayer did receive the items of income at issue in this refund action. To hold contrary to this determination would have a profound effect on the definition of receipt and the Service's ability to tax such income.

## ARGUMENT

### I.        Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rogers v. Bromac Title Services, LLC*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting FED. R. CIV. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Because the record, taken as a whole, cannot lead a rational trier of fact to find for Plaintiff, there is no genuine issue for trial, and summary judgment is proper. *Matsuhita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 587 (1986). "[T]his court construes 'all facts and inferences in the light move favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). But "[s]ummary

3

judgment may not be thwarted by conclusions allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.*

## II.     Actual Receipt of Income Occurs When Income is Reduce to a Taxpayer's Possession

According to the Internal Revenue Code, gross income is taxable income.  26 U.S.C. § 63(a).  Gross income is defined as "all income from whatever source derived." *Id.* at § 61.  "This definition [of gross income] has broad scope and exclusions from gross income must be narrowly construed." *See Devine v. Comm'r of the Internal Revenue*, Docket No. 16329-15, 2017 WL 2558814, at *9-10 (T.C. June 13, 2017) (citing *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995)) (internal citations omitted).  In defining the scope of gross income in Section 61, all cases recognize that "the purpose of Congress was 'to use the full measure of its taxing power.'" *James v. United States*, 366 U.S. 213, 218 (1961) (citing *Helvering v. Clifford*, 309 U.S. 331 (1940)).  The income-defining statutes have a broad definition because the intent of Congress is to tax "all gains except those specifically exempted." *James*, 366 U.S. 219 (citing *Comm'r v. Jacobson*, 336 U.S. 28, 49 (1949)).  Payments that are "undeniable accessions of wealth, clearly realized, and over which the taxpayers have complete dominion" are taxable. *See Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1995).  Disbursements from individual retirement accounts, along with annuities and pension payments, are specifically included in the Code's definition of gross income.  26 U.S.C. §§ 61, 408(d)(1).

Section 451 of the Internal Revenue Code determines when an item of income is to be included in gross income.  The general rule is that "the amount of any item of gross income shall be included in gross income for the taxable year in which *received* by the taxpayer."  26 U.S.C. § 451 (emphasis added).  Treasury regulations further provide that "[g]ains, profits, and income are

to be included in gross income for the taxable year in which they are *actually or constructively received* by the taxpayer." 26 C.F.R. § 1.451-1(a) (emphasis added). Although the Internal Revenue Code does not define "actual receipt," the case law on the subject provides some instruction. For example, income that is "subject to a [taxpayer's] unfettered command and that he is free to enjoy at his own opinion may be taxed to him as his income, whether he sees fit to enjoy it or not." *Corliss v. Bowers*, 281 U.S. 376, 378 (1930); *see also Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) (describing income as "accessions to wealth, clearly realized and over which the taxpayers have complete dominion").

Although the taxpayer here was of advanced age and in declining health, she actually received her retirement and pension income disbursed to her from respective sources in her name and directly deposited into her bank account. The taxpayer did in fact have the "unfettered" control over her income that is contemplated by the Internal Revenue Code. The items of income derived from the taxpayer's retirement and pension accounts she inherited from her deceased husband were directly deposited into a personal checking account of which the taxpayer was the sole owner.[1]  *See* Def. **Ex. 4**. There is no evidence that Chip Nice restricted the taxpayer's access to her retirement, pension or bank account, nor evidence that he restricted the taxpayer's ability to access funds from her accounts. In fact, the taxpayer's daughter-in-law testified that she observed the taxpayer writing checks for various reasons, such as piano lessons for her daughter and to go to the hair salon. *See* Def. **Ex. 13**, Deposition Transcript of Jewelynn Nice, 41:7-17. The Court also found the taxpayer "had access to the [personal checking]

---

[1]  Julianne Nice, the taxpayer's daughter and curatrix of her estate, admitted that the items of income at issue were directly deposited into the taxpayer's checking account. *See* Def. **Ex. 14**, Depo. Transcript of Julianne Nice, at 291:21-25, 292:1-3.

account; made withdrawals from it to her personal use; wrote checks to the account; and most importantly, knew that it existed." ECF No. 76, p. 9. There were no restrictions on the taxpayer's legal authority and right to access the funds.

### III.   The Taxpayer Possessed Knowledge of and Control Over Personal Checking Account Into Which Income was Received

The crux of Plaintiff's refund claim that the taxpayer lacked the requisite knowledge needed to receive income and to manage her income once she received it. Plaintiff alleges that "many Courts have routinely held" that actual possession does not occur when that possession is "hindered through no fault of the taxpayer, and taxpayer is not free to enjoy the funds at her own option." *See* ECF No. 35-1, p. 11. However, Plaintiff provides no authority to support this assertion. Instead, Plaintiff's argument relies solely on two cases, *Roberts v. C.I.R.* and *Leslie v. Comm'r of the Internal Revenue*, neither of which stand for this proposition. In *Roberts*, the petitioner argued that the distributions his ex-wife diverted from his IRA accounts without his knowledge and consent should not be included his total gross income for tax year 2008. *Roberts v. C.I.R.*, 141 T.C. 569, 579 (2013). The Court agreed with the petitioner and determined that (1) he was not a payee or distributee within the meaning of 26 U.S.C. § 408(d)(1) and (2) he did not fail to report any income attributable to his distributions from his IRA accounts on his 2008 tax return because the funds were never distributed to him. In *Leslie*, the issue was whether the taxpayer received payments from Enron in 2009, when the payments were issued, or 2010, which is when the taxpayer alleged she received the payments. *Leslie v. Comm'r*, Docket Nos. 9894-12L, 27014-12, 2016 WL 4921026, at *7 (T.C. 2016). Using principles of constructive receipt, not actual receipt, the Tax Court found that the taxpayer received the funds in 2010,

when a court ordered the release of the funds to her – and in that year Leslie was required to report the Enron payments on her tax return.  *Id.*

The Court addressed each case in its Order and Reasons and distinguished them both from the instant case.  Unlike the petitioner in *Roberts*, the Court found that the taxpayer "was the sole owner of the checking account into which the IRA distributions were made."  ECF No. 76, p. 8.  The Court also noted that "Plaintiff points to no evidence in the record establishing that the distributions were made over forged signatures, that the account into which the distributions were deposited was joint, or that Chip [Nice] had exclusive access to the funds in the account. Mrs. Nice, at all times, was the owner of the account into which the deposits were received."  *Id.* at p. 8-9.  The evidence in the record "demonstrated that Mrs. Nice *did* have a checkbook for, write checks on, and made withdrawals from the account."  *Id.* at p. 9 (emphasis in original). The Court found *Leslie* to be "inapposite" to a determination that no actual receipt existed.  *Id.* (specifically finding that, unlike the taxpayer in *Leslie*, Mrs. Nice "had access to the account; made withdrawals from it for her personal use; wrote checks on the account; and most importantly, knew that it existed.").

Plaintiff's allegation that the taxpayer suffered from dementia and, thus, had no knowledge of the income she received is not relevant to its claim for refund.  Whether or not the taxpayer was of sound mind has no impact on her ability to receive income.  The Court recognized that there is no knowledge requirement necessary to receive income in its order denying Plaintiff's motion for partial summary judgment.  *See* ECF No. 76, n. 37 ("To be clear, in order to receive income, the taxpayer need not be aware of the income.  Further, there is no requirement that the taxpayer be the individual responsible for the effectuation of income or the source of the income.").  The fact that the taxpayer might not have been aware that income was

7

directly deposited into her account or that the income was withdrawn from her account does not

negate that fact that she received those items of income.

### IV. The Taxpayer Actually Received the Retirement and Pension Income Directly Deposited Into Her Personal Checking Account

There is no genuine dispute of material fact over whether the taxpayer actually received

the income directly disbursed into her personal bank account and reported on her federal income

tax returns.  Here, the evidence shows that the taxpayer did receive the income reported on her

federal income tax returns, as demonstrated by the taxpayer's wage and income transcripts and

the taxpayer's checking account statements, all showing receipt of the intended disbursements by

direct deposit into the taxpayer's personal checking account.  *See* Def. **Exs. 4** and **5**.

In this case, unlike the petitioner in *Roberts*, the taxpayer is a distributee as contemplated

by Section 408 of the Internal Revenue Code and the distributions of her retirement and pension

directly deposited into her checking account were properly reported as the taxpayer's income on

her 2006, 2007, and 2009 through 2013 tax returns.  Specifically, the disbursements came from

the retirement accounts that were owned by the taxpayer and of which she was the sole

beneficiary.  *See* Def. **Ex. 2**.  The distributions were addressed to the taxpayer and deposited into

an account which she alone was entitled to control.  *Id.*  Once the payments were deposited into

the taxpayer's personal checking account, she became a payee and distributee within the

meaning of Section 408, which requires that the disbursement be reported as gross income.

There is no evidence that the taxpayer did not authorize the withdrawals from her retirement

accounts; that the taxpayer did not benefit economically from the disbursements; or that the

funds were diverted from the retirement account to an account to which she had no access.  Thus,

the direct disbursements into Mrs. Nice's personal checking account were properly included in

the taxpayer's gross income. *Rey v. C.I.R.*, T.C. Memo. 2016-58, *7 (T.C. 2016) (holding that bank deposits are prima facie evidence of income); *see also Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964) (finding that the bank deposit method starts with the presumption that all money deposited in a taxpayer's bank account during a given period constitutes taxable income).[2]

### V.   The Taxpayer's Federal Income Tax Returns Support the Determination that She Actually Received Income

The federal income tax returns filed with the IRS demonstrate the taxpayer's actual receipt of income. *See* Def. **Exs. 6-12**. According to the taxpayer's daughter-in-law, the signatures on the federal income tax returns are the taxpayer's. *See* Def. **Ex. 13**, Depo. Trans. of Jewelynn Nice 108:1-25-116:1-22. Because the signatures are properly authenticated, the tax returns (and the amounts of income reported on the tax returns) are valid and, thus, are admissions of a party opponent under Federal Rule of Evidence 801(d)(2). Although the taxpayer passed away in March 2019 and is no longer a party to this lawsuit, any admissions she made are attributable to her estate. *See In re Youngblood*, No. 07-70072, 2009 WL 1232103, at

---

[2] In *Roberts*, the Court was able to hear testimony from the petitioner and his ex-wife in order to determine whether the petitioner received the distributions from the IRA accounts. The Court's analysis was based on, in part, "credible" testimony from the petitioner that he did not authorize, receive or benefit from the IRA distributions. *Roberts*, 141 T.C. at 577. Here, the only two individuals with first-hand knowledge of the events surrounding the disbursements from the retirement accounts are both deceased: the taxpayer, Mary Ellen Cranmer Nice and Chip Nice. Moreover, Chip Nice, at the time the tax returns were filed, had the apparent authority to act on his mother's behalf, based on a power of attorney the taxpayer executed. However, in this case, the Court is able to determine that taxpayer received the items of income in question without the aid from live testimony at a trial; rather, the taxpayer's own checking account statements, Wage and Income Transcripts and federal income tax returns are evidence of her receipt of income.

*5 (Bankr. S.D. Tex. Apr. 29, 2009) (citing *Estate of Shafer v. Comm'r of the Internal Revenue*,

749 F.2d 1216, 1220 (6th Cir. 1984) ("Since Arthur, through his estate, is a party to this action,

his statements are a 'classic example of an admission.'") (quoting FED. R. EVID. 801(d)(2)

advisory committee note)).  The filing of a tax return is an acknowledgement of the receipt of

income.  Here, taxpayer's federal income tax returns correctly stated the amount of income she

received during the tax years at issue.[3]  The gross distributions from the financial institutions that

are shown on the Forms 1099-R provided to the IRS and to the taxpayer correspond with the

amounts reported on her federal income tax returns.  Thus, the tax returns are an

acknowledgement of the taxpayer's actual receipt of income.

## CONCLUSION

Based on the undisputed material facts, the taxpayer, Mary Ellen Cranmer Nice, actually

received the items of the income directly distributed into her personal checking account and

reported on her 2006, 2007, and 2009 through 2013 federal income tax returns, as evidenced by

Plaintiff's own personal checking account statements, Wage and Income Transcripts and the

---

[3] The United States anticipates that Plaintiff will argue that taxpayer's signatures on her federal income tax returns were procured by fraud at the hands of her son, Chip Nice, but will be unable to point to any evidence in the record to support this claim.  Not only is this fact immaterial, Plaintiff's unsubstantiated allegations of forgery would not support the denial of the United States' motion for summary judgment.  *See Marquez v. Woody*, 440 Fed. App'x. 318, 322-25 (5th Cir. 2011) (concluding that "conclusory statements in [a] verified complaint are insufficient to overcome [a] motion summary judgment); *Sanches v. Carrollton-Farms Branch Ind. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient" to support a motion for summary judgment.).  *See also United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (holding that while a self-serving and/or uncorroborated affidavit may be sufficient to defeat summary judgment, the affidavit must be "non-conclusory").  The Court also noted in its Order and Reasons that "Plaintiff points to no evidence in the record "establishing that the distributions [from the taxpayer's bank account] were made over forged signatures."  ECF No. 76, p. 8.

taxpayer's own federal income tax returns, which she signed.  The Court should determine that, as a matter of law, the taxpayer actually received the income directly disbursed into her personal checking account and reported on her federal income tax returns, and grant the United States' motion for summary judgment and deny Plaintiff's request for a refund of $519,502 of federal income taxes paid, plus penalties and interest, for the 2006, 2007, and 2009 through 2013 tax years.

Dated: January 10, 2020                                Respectfully submitted,

                                                       RICHARD E. ZUCKERMAN
                                                       Principal Deputy Assistant Attorney General

                                                       /s/ Elizabeth N. Duncan
                                                       ELIZABETH N. DUNCAN
                                                       Virginia Bar No. 90685
                                                       Trial Attorney, Tax Division
                                                       U.S. Department of Justice
                                                       P.O. Box 14198
                                                       Washington, D.C. 20044
                                                       (202) 514-6546 (v)
                                                       (202) 514-4963 (f)
                                                       Elizabeth.N.Duncan@usdoj.gov

                                                       Of counsel:

                                                       PETER G. STRASSER
                                                       United States Attorney
                                                       Eastern District of Louisiana

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of January 2020, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF, which send notification to the

following counsel of record:

> Michael A. Mayhall
> The Mayhall Law Firm
> 724 E. Boston Street
> Covington, Louisiana 70433
> (985) 246-1700
> mike@mayhalltaxlaw.com

> Herbert V. Larson, Jr.
> The Law Offices of Herbert V. Larson, Jr.
> 700 Camp Street
> New Orleans, Louisiana 70130
> (504) 528-9500
> hvl@hvllaw.com

> */s/ Elizabeth N. Duncan*
> ELIZABETH N. DUNCAN
> Trial Attorney, Tax Division
> United States Department of Justice